CHANCERY.

## McMillin vs. McMillin.

Case 119.

Appeal from the Clark Circuit; GEORGE SHANNON, Judge.

_Decrees. Conveyances. Wills. Mistakes in writings. Parol contracts for land. Statutes. Evidence. Bar by lapse of time. Possession. Limitation._

October 14.

Judge MILLS delivered the opinion of the court.

_History of the title to the land in contest._

JAMES McMILLIN, jun. obtained from the court of commissioners, appointed by Virginia to adjudicate upon the right of settlers to vacant lands, in the district of Kentucky, a certificate for a set-

McMILLIN
vs.
McMILLIN.

tlement of 400 acres of land, preemption of 1000 acres adjoining, in the year 1779, and assigned the same to William Trimble, who agreed to clear it out of the different offices and carry it into grant for one half of the land. A preemption warrant was obtained, and the proper entries and surveys were made, and grants issued for the whole 1400 acres to said Trimble, as assignee of said James McMillin, jun. A division was made, assigning to Trimble the whole of the settlement and three hundred acres of the preemption contiguous to the settlement; and to the original proprietor, James McMillin, jun. the residue of the preemption, being 700 acres. At this time, James McMillin, sen. the father of the said James McMillin, jun. the original proprietor, and father-in-law of Trimble, had settled upon the said last named 700 acres with his family, with the assent of his son, James McMillin, jun. and in the year 1788 or 9, the said William Trimble, the patentee, conveyed to the said James McMillin the elder, the said 700 acres of the preemption, by a deed which was never recorded, and is now lost. The said James McMillin the elder, continued to reside on said tract till his death, and sold and conveyed 200 acres, part thereof, to a Mr. Ritchie, retaining 500 acres; and at his death he left a will, by which he devised 300 acres of said 500 acres to his son, William McMillin, now appellee, together with a slave; 100 acres more he devised to his grand son, John McMillin, son of his son James McMillin, jun. the original proprietor, and the remaining 100 acres he devised to his grand son, James McMillin the third, a son of his son Robert McMillin; and to his daughter, the wife of Trimble, he devised a slave. Long after the death of said James McMillin the elder, his son William, the appellee, continued in possesion of the tract, he having resided with his father till his marriage, and after his marriage, on the same farm, but in a different house, and being the manager of his father's business during his old age.

Against him, the said William McMillin, the said James McMillin the third, the devisee of the 100 acres, brought an ejectment and recovered a judgment.

Judgment in ejectment.

McMILLIN
vs.
McMILLIN.

Bill on the
equitable
title.

Allegations
of William
McMillin's
bill.

To be relieved against this judgment he filed this bill in equity, setting up his equitable claim to the whole 500 acres.

His alleged equity is, that in 1783 his brother Robert, father of the present appellant, had secured lands of his own; that his brother James the original proprietor of the present tract had amassed large quantities of land, and that he, William McMillan, was too young to acquire any, and his parents were poor and unable to do so, and that his brother James, the proprietor designed the moiety of this settlement and preemption as a home for his father and mother, during their lives, and after their death to go to him the complainant, and that, for this purpose, it was agreed verbally between the said James sen. the father, James jun. the proprietor, and the complainant, who was then about 14 years of age only, that he the complainant should stay with and support and comfort the parents during their lives, and that after their death, the land and all their estate, should belong to him, the complainant; and that he had complied with his part of the bargain, and assented thereto after he came of age, and after his own marriage, had still continued to support and take care of his parents, and had paid for them large sums of money; that in 1787, having paid a visit to a wealthy uncle in Virginia, the uncle had offered to adopt him as a child, to give him a liberal education, and raise him to a profession; and that this proposition was made known to the parents, and they were unwilling to part with him, and the parol contract touching their estate was then renewed, and it was agreed that 300 acres out of the 700 should be sold to purchase negroes for the parents, and those negroes were to belong to him the complainant at their death; and a bond was given to him, binding his father to convey to him the remaining 400 acres of the tract, which bond he exhibits.   That afterwards only 200 acres were sold for slaves to Ritchie, leaving 100 acres, part of the 300, unsold and uncovered by the bond of the father, but which 100 acres he insists he is entitled to, as it was not sold, by virtue of the original parol contract, which was fulfilled on his part.   He alleges that he cannot account for

the conveyance from Trimble, the patentee, in fee simple to his father, if it ever existed, and insists it was contrary to the intention of his brother, James junior, the proprietor and donor of the 700 acres. He accounts for his father's disposing of the land first to himself, and then to the appellant by will, by declaring him in his dotage; and insisting that the will is a forgery, procured, if not by the appellant, by some one else for him, palming the will upon the testator; and endeavors to give color to this charge, by charging that the said testator was induced to sign a deed for the land to the appellant, and he, the appellant, had obtained a conveyance of the land from Trimble, the patentee, for the 100 acres, supposing it was never conveyed by Trimble to the testator.

McMILLIN
vs.
McMILLIN.

The appellant, in his answer, denies all the equity of the bill, contests the execution of the bond set up by the complainant, and pleads and relies on the act to prevent frauds and perjuries, and the statute of limitations, as a bar to all pretended parol agreements. He exhibits a conveyance for the same land from the testator, but states it is dated when he himself was only about two years old; that he found it among the papers of his father; that he knows not whether it is genuine or not, as he is wholly unacquainted with the hand writing of either parties or witnesses, and does not rely upon it, but upon the will of the testator, which now cannot be contested. He admits a deed from Trimble, the patentee, and alleges it was obtained under the impression that the legal title was still in him, the conveyance to the testator by Trimble being lost, or, as he insists, destroyed by the complainant.

James McMillin's answer.

The court below decreed to the complainant the 100 acres of land, and granted a perpetual injunction. From this decree the defendant in chancery (the plaintiff at law) has appealed.

Decree of the circuit court.

There are some other grounds of equity set up by the appellee, not before noticed, which we shall barely mention, to shew that they are unavailing. After the death of his father, he filed his bill against the heirs of William Trimble, and obtained a decree

Decree obtained by the complainant, Trimble's

McMILLIN
vs.
McMILLIN.

heirs, unavailing.

against them for the conveyance of the legal estate to the whole 500 acres; and a conveyance was accordingly executed. This conveyance, and decree on which it is founded, cannot avail him; for it is shewn that William Trimble, in his life, had conveyed to the father and testator, James McMillin the elder; and of course a decree against *his* heirs could pass nothing. As he had parted with the title in his lifetime, nothing could descend to his heirs; and the loss of the deed which he had made did not restore to him or heirs the legal estate. Besides, the judgment at law proves the legal title in the appellee, and the filing of this bill in equity admits the same fact.

Conveyance by the commissioners of the county court, ineffectual.

The appellee also applied to the county court and obtained the appointment of commissioners, and a conveyance by them in pursuance of the bond which he held, under the act of assembly regulating such proceedings. But it is not shewn that the statutes on this subject were complied with, and the bill tacitly admits that they were not; and the judgment at law is sufficient to get clear of this supposed title. If valid, it must be legal. If it is not legal, it cannot confirm the original equity.

Last wills cannot be successfully assailed in equity, after the lapse of seven years from the probate, unless the complainants are under some disability.

The attack on the will of the testator must likewise be overruled. The will has been proved, and admitted to record, for more than seven years before this suit was brought. It is not shewn that there is a disability in any of the parties thereto, which will authorize a contestation of the will, by bill in equity, after seven years have expired, the period to which all such controversies are limited by the act regulating the probate of wills. Of course the will must be held valid, and incontestable.

Bond on Jas McMillin the elder, the complainant, for the land.

As to the bond set up by the complainant, given to him by James McMillin the elder, his father and testator, the proof made by one of the subscribing witnesses, shews that it is genuine. It is in due form, and would, from its terms, authorize the presumption, that it is founded on a valuable consideration. Possession has long remained with it, and we concur with the court below, that it must be held valid, and a good, equitable claim to all the land which it covers.

But a difficulty occurs in its calls. The 400 acres which the testator, James McMillin the elder, stipulated to convey by the terms of the bond, is described as "part of the pre-emption on Howard's lower creek, on which he (James McMillin the elder and obligor) now lives, beginning at the *most south-west end of said preemption*, extending upward so far as to include the above mentioned tract (of 400 acres), and all the improvements whatsoever."

McMillin
vs.
McMillin.

Cal's of the bond relied on.

Now if the bond is carried for its beginning to the extreme *south-west* end of the *preemption* literally, and then extended upward for the quantity of 400 acres, with the original lines, it will not include much of the land in contest. But when it is so carried, it will include 300 acres of the pre-emption still belonging to Trimble, the patentee, or his alienees, and which never belonged to the obligor, and which he never could have conveyed.

It is insisted in the bill, that in this respect this call of the bond is mistaken, and that it must be corrected.

Mistake in the bond relied on in the bill.

The answer denies, and requires proof of the mistake; and it is now insisted that the parol proof is insufficient to afford the correction.

Answer denying the mistake.

If the land could be obtained where this call directs it to begin, and the remaining calls of the bond could be complied with, there might be some difficulty in maintaining that the parol proof was sufficient to warrant the chancellor in determining that there was a mistake, and in correcting it. But when the calls are applied to the ground and to the subject then bought and sold in the contemplation of the parties, a violent presumption arises, that one did not intend to buy land which the vendor could not sell, and the vendor to sell that which he had not. Such a contract could not be intended. Add to this, that the remaining call to "include all the improvements whatsoever," could not be complied with by beginning the bond according to the letter. Thus the bond on its face furnishes the correction, as well as the situation of the ground. It was known that Trimble held the settlement, and resided on it, with 300 acres of contiguous preemption land, and the

Mistake in one of the calls in the bond, corrected, by the fact that otherwise land would be included obligor did not claim, and by other calls in the instrument.

McMILLIN
vs.
McMILLIN.

preemption boundary intended must therefore have been that boundary, to which the vendor extended; and thus, in conformity to the other calls of the bond, this call must be construed. The call for the "most south west end of said preemption," must be held to mean the most south west end of that part of said preemption held by the obligor. Giving the bond this position, it includes most of the land in controversy.

**Part of the land in contest not included in the bond relied on.**

But there is still some included in the devise to the appellant, and not included in the bond set up by the appellee, which lies between the bond and the 200 acres sold to Ritchie. To recover this, the complainant must rely on his parol contract without writing; and the question is, can he succeed on that equity.

**Statute of frauds and perjuries took effect 1st January, 1787, and does not affect parol contracts for land, made before that date.**

We put the act to prevent frauds and perjuries out of the question. For that act did not take effect in Virginia till the first day of January, 1787; and before that period this contract was made; and it has been repeatedly held by this court that that act did not affect contracts existing at its passage.

**Claim on the parol contract supported by the evidence. But—**

The proof does conduce to shew some understanding between the parties, that the testator and his wife should hold the land during their lives; and that the appellee, though then a youth, of about fourteen years of age, should have it at their death as his portion, the rest being supposed to be provided for, and the appellee was to remain with, or be the conductor of the necessary business, and administer to the necessities of his parents in their old age. It is, however, somewhat probable at least, that this arrangement was afterwards modified; and this probability, arrises form the acts of the parties. Instead of conveying to the appellee, or to his parents, first a life estate and the remainder to him, according to the agreement, Trimble, with the concurrence of all concerned, conveyed the fee simple to the father and testator. By virtue of this title, the testator sold and conveyed to Ritchie, and made the devise in question; and under the same title, gave his bond to the appellee, and ever treated the land as his own. On an after occasion, it was concluded to

place 300 acres in market, and by bond to secure to the appellee the remaining 400. 200 acres alone were sold. Under these circumstances, there is some ground to infer that the parol contract was settled in 1788, at the giving of the bond. But as there is proof that the proceeds of the land, if sold, was ultimately to go to the appellee, and that where not sold it was to be considered his, it remains to enquire what effect the statute of limitations must have upon the contract.

The whole tract remained in the possession of James McMillan the elder and testator, till his death, which happened upwards of twenty years before this suit was commenced. A great part of this time the appellant was an infant, but the appellee was not. The appellee was left in possession at the death of the testator. The devise to the appellant included a part of the improvements, which was likewise included in the bond; but that part which is included in the devise, and not included in the bond, was woodland, and was never enclosed till a short time before the ejectment was commenced; and that ejectment has proved the legal estate in the appellee. The appellee is, therefore, attempting to enforce against the legal estate a parol contract, after more than twenty years delay, without any ignorance of his rights, and without any obstacle or impediment in his road. Under such circumstances he must be held to be barred. It has been held by this court, in the case of Allen &c. vs. Beall's heirs, 3 Marsh. 554, that a parol contract for land was barred after five years had elapsed, and that as the right to sue at law for a breach was gone, so was the remedy for a specific execution; and that as equity would notice the statute and acknowledge obedience thereto, although not within its letter, it must follow the law, and refuse its aid, where the law held the contract to be ended by delay.

We are aware that courts of equity after they adopted the statute as a rule, were anciently in the practice of admitting numerous exceptions not made in the statute, and exempting cases of ignorance, fraud and such like. In modern times, however, chancellors are in the practice of confining them-

McMILLIN
vs.
McMILLIN.

The lapse of five years is a bar to a bill in equity for the performance of a parol contract for land, of which complainant had not held the possession, as it is to an action at law.

Exceptions anciently allowed to this rule not latterly indulged; but the statute law of

McMillin vs. McMillin.

limitations more strictly followed.

selves more closely to the act, and refusing to make many of the exceptions formerly held valid. The adhering closely to the statutes in this country has been of essential service to the community in settling landed controversies, while a contrary policy would have kept alive many suits. That the chancellor in this country will in no case take an exception not taken by the statute, we need not determine; and whether possession will or will not make one of these exceptions, we need not now enquire. The possession here was not old enough to bar the legal estate; and indeed the land within the devise and outside of the bond, was not inclosed till late. As to this much, therefore, the statute must be held as a bar, and the court below erred in decreeing that portion to the complainant.

Decree reversed in part.

Decree reversed with cost, and cause remanded, with directions for such decree as shall not be inconsistent with this opinion.

*Hanson* for appellant, *Wickliffe* for appellee.

Ejectment.

Case 120.

October 15.

Judgment in ejectment recovered by Speed.